**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
CHERIFA BELABBAS,                                          :
                                                          :
                                  Plaintiff,              :          Civil Case No.: 1:16-cv-07379 (LGS)
                                                          :
                      v.                                  :
                                                          :          **SECOND AMENDED**
INOVA SOFTWARE INC., FRITZ EISENHART,                     :          **COMPLAINT**
in his individual and professional capacities, and        :
GILLES TOULEMONDE, in his individual and                  :          **Jury Trial Demanded**
professional capacities,                                  :
                                                          :
                                  Defendants.             :
------------------------------------------------------------------X

Plaintiff Cherifa Belabbas ("Plaintiff" or "Ms. Belabbas") alleges:

**PRELIMINARY STATEMENT**

1.      According to Inova Software Inc. ("Inova" or the "Company"), now is "the age of

the team."[1]  Unfortunately for Cherifa Belabbas, a former employee of Inova, the Company's

definition of the term "team" does not include those who speak out against pervasive

discrimination in the workplace.  Indeed, when Ms. Belabbas complained about discriminatory

business practices that favored her male, French peers, her concerns were openly dismissed and

actually cited as the reason for her summary termination.

2.      The discrimination against Ms. Belabbas in favor of her male, French peers was

not subtle.  For example, Mr. Eisenhart had told Ms. Belabbas, **"I would rather have [a sales]**

**role managed by the French because I do not trust them," referring to the employees from**

**the U.S. office**.

3.      On another occasion he snidely asked Ms. Belabbas, **"You know this is a French**

**company, right?"** as a justification for discriminatory sales practices.

---

[1]          http://www.inova-software.com/about-us/.

4.      Mr. Eisenhart also frequently made misogynistic remarks in the office.  On one occasion, Ms. Belabbas relayed to Mr. Eisenhart that a client, Proctor & Gamble, was waiting to make a decision on giving additional work to Inova until after a certain business announcement was made.  Ms. Belabbas also explained that she learned this from her contact at Proctor & Gamble, Janine Elam, who happens to be female.  Mr. Eisenhart responded, "**An announcement?  Maybe she [Ms. Elam] is pregnant by her boss.**"

5.      As another example, when Ms. Belabbas reported to Mr. Eisenhart that a particular contact, Ramon Mohanlal, who was working for a prospect, BeyondSpring Pharmaceuticals, seemed to be interested in doing business with Inova, he disparaged her efforts and ability by stating that the prospect was **"likely just hitting on [her]."**

6.      Ms. Belabbas complained about this discriminatory treatment both verbally and in writing.  The Company's responses demonstrate Inova's complete lack of concern for discrimination in the workplace.  Indeed, in response to one complaint, Gilles Toulemonde, Inova's global Chief Executive Officer (Inova, Mr. Eisenhart and Mr. Toulemonde, together, "Defendants,") told Ms. Belabbas to "**stop copying me on your emails about your issues with Fritz [Eisenhart].**"

7.      On April 11, 2016, Ms. Belabbas sent an email to Mr. Eisenhart and Mr. Toulemonde that included a complaint that prospects within her sales territory were being "transferred to a colleague of the French office and based in France."  Mr. Toulemonde responded to Mr. Eisenhart, "**Enough is enough.  Good luck with her.**"

8.      As a result of Defendants' discriminatory and retaliatory conduct, Ms. Belabbas began suffering from various medical issues, including very low blood pressure, dizziness and tremendous stress and its related effects.  She repeatedly informed the Company of these medical

2

issues, beginning in late March or early April 2016.  On May 2, 2016, Ms. Belabbas told Inova that she needed to take a medical leave of absence due to these medical issues.

9.      On May 3, 2016, the very next day after disclosing her need to take medical leave, Mr. Eisenhart called Ms. Belabbas to inform her that she would be terminated immediately.  He later sent Ms. Belabbas an email that reads, in part, "We are sorry to hear about your illness and hope you will soon feel better.  It is clear you are unhappy working at Inova and that you have a significant amount of anger directed toward me.  While we tried to resolve that in an informal mediation, that was not successful **as proved by your last email dated April 11th**, and I think we both feel the atmosphere is not productive between us . . . **As a result, we are separating you from the Company.**"

10.     Ms. Belabbas brings claims against Defendants for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* (the "FMLA"), Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*, as amended by the ADA Amendments Act (the "ADA"), New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* (the "NYSHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* (the "NYCHRL").  Ms. Belabbas seeks injunctive and equitable relief, as well as monetary damages, to redress the unlawful employment practices committed by Defendants against Ms. Belabbas, including, *inter alia*, Defendants' decision to terminate Ms. Belabbas because she made complaints of unlawful race, ethnicity, national original and gender discrimination, as well as on the basis of her race, ethnicity, national origin, gender, disability and/or perceived disability and need to take medical leave.

## JURISDICTION AND VENUE

11.     Pursuant to 28 U.S.C. §§ 1331 and 1343, the Court has subject matter jurisdiction over this action because this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII, § 1981, the FMLA and the ADA.

12.     Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over Plaintiff's related claims under the NYSHRL and NYCHRL.

13.     Pursuant to 28 U.S.C. § 1391(b)(1)-(2), venue is proper in this district because Inova Software Inc. is headquartered in New York City and does business in this district.  In addition, a substantial part of the events or omissions giving rise to this action occurred in this district.

## ADMINISTRATIVE REQUIREMENTS

14.     Ms. Belabbas filed a charge of discrimination and retaliation, arising out of the facts described herein, with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII and the ADA.  On May 30, 2017, the EEOC issued Ms. Belabbas's a notice of right to sue letter, received on June 3, 2017.  Plaintiff now files this Second Amended Complaint to include claims for Defendants' violations of Title VII and the ADA.

15.     Pursuant to NYCHRL § 8-502, Ms. Belabbas served a copy of the original Complaint, filed with this court on September 21, 2016, upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, on September 22, 2016, thereby satisfying the notice requirements of that section.

16.     Pursuant to NYCHRL § 8-502, Ms. Belabbas will serve a copy of this Second Amended Complaint upon the New York City Commission on Human Rights and the New York

City Law Department, Office of the Corporation Counsel, within ten days of its filing, thereby satisfying the notice requirements of that section.

17.     Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

18.     Plaintiff Cherifa Belabbas is a citizen of the United States and a Semitic Arab-Berber woman of Belgian/North African national origin who resides in New York County, New York.  At all relevant times, Ms. Belabbas met the definition of an "employee" under all applicable statutes.

19.     Defendant Inova Software Inc. is a Delaware corporation with its headquarters and corporate offices in New York County, New York.  At all relevant times, Inova met the definition of an "employer" of Plaintiff under all applicable statutes.

20.     Defendant Fritz Eisenhart is the President and CEO of Inova Software Inc.'s U.S. operations.  At all relevant times, Mr. Eisenhart met the definition of an "employer" of Plaintiff under all applicable statutes.

21.     Defendant Gilles Toulemonde is Inova Software Inc.'s global CEO.  At all relevant times, Mr. Toulemonde met the definition of an "employer" of Plaintiff under all applicable statutes.  Although Defendant Toulemonde is based in France, his conduct, as outlined below, affords this court jurisdiction over Defendant Toulemonde based on his near-daily contact with New York and the unlawful and discriminatory actions as described below that have impacted New York and are the subject of this litigation.  By way of example only, Defendant Toulemonde:

- •     has managed the New York office's operations since 2010;

- has near-daily operational contact with the New York office and is heavily involved in sales and marketing, service delivery and even human resources operations;

- visits the New York office regularly and attends various events and conferences in the United States, acting as the face of Inova's New York office;

- spent months in New York City; and

- has control over various other personnel decisions in and affecting the New York office.

## FACTUAL ALLEGATIONS

### I.   Ms. Belabbas is Subjected to Pervasive Discrimination

22.     Ms. Belabbas was hired by Inova as a Presales Engineer and Senior Project Manager in 2009.

23.     During her approximately seven years with the Company, Ms. Belabbas was extremely successful in her role and received excellent performance reviews and client feedback throughout her employment.

24.     Ms. Belabbas's ability to do her job, however, was greatly undermined starting in January 2013, when Mr. Eisenhart was named President and CEO of Inova's U.S. operations and became Ms. Belabbas's direct supervisor.

25.     As an illustration of her marginalization, throughout 2013, Mr. Eisenhart assigned Ms. Belabbas to only one new project.

26.     In contrast, the vast majority of new projects in 2013 were assigned to her male French colleagues, Shanker Shrestha and Christopher Chan.

27.     This disparate treatment continued for years, as Mr. Eisenhart failed to assign Ms. Belabbas to any new projects from 2014 until her termination in May 2016.

28.     Despite this discriminatory treatment, Ms. Belabbas made every effort to, and did, contribute to Inova's success, including by volunteering to assist with the Company's sales efforts in late 2013.

29.     Over the next two years, Ms. Belabbas achieved extraordinary results for the Company.

30.     For example, Ms. Belabbas broke a Company record in bringing in more new subscription accounts than any of her colleagues.  Each of these accounts was closed in record time and will continue to generate recurring revenue for Inova year after year.

31.     Many of the accounts that Ms. Belabbas secured are highly lucrative and/or required substantial work on her end to close.

32.     An example of such an account is AbbVie, a top ten account that was on the verge of renewing its contract with an Inova competitor – ideaPoint – before Ms. Belabbas won the business.

33.     At the time of her termination in May 2016, Ms. Belabbas was on the verge of closing nine more new accounts, and had many other viable prospects as well.

34.     Nonetheless, Ms. Belabbas was forced to endure widespread discrimination during her time at Inova, as Mr. Eisenhart and the Company continually undermined Ms. Belabbas in favor of her male and French colleagues.

35.     For example, when Ms. Belabbas began assisting with sales, she and Senior Vice President Guy Henninger split the sales duties originating from Inova's U.S. office.

36.     When Mr. Henninger left the sales team in January 2015, all of his accounts and progressed opportunities were shifted to Ms. Belabbas's male colleagues based in France, rather

than Ms. Belabbas, despite the fact that the accounts were all located in North America (and at least two were located in a territory covered by Ms. Belabbas before Mr. Henninger's departure).

37.     Then, throughout 2015, Ms. Belabbas's region was repeatedly diminished, as her male French colleagues were given more and more of accounts located in her territory in North America.

38.     In October 2015, the accounts of the entire U.S. east coast territory was transferred from Ms. Belabbas to her male French colleagues.

39.     Ms. Belabbas's male French colleagues were given various advantages, even within sales territories that were supposed to be exclusive to Ms. Belabbas.

40.     For example, whereas Ms. Belabbas was forbidden from attempting to pitch business to clients within regions covered by the French team, her male French colleagues were allowed to pitch and acquire clients within her regions.

41.     Furthermore, her male French colleagues were given – and also given the credit and economic advantage for – accounts that Ms. Belabbas brought to the verge of closing.

42.     An example of Ms. Belabbas's success is the Macrogenics account, which was brought in solely due to a relationship Ms. Belabbas had developed with someone who agreed to work with Inova and later moved to Macrogenics and was retained as a client.

43.     By contrast, when Ms. Belabbas brought a deal with Jazz Pharmaceuticals to the contracting stage, the Company instead attributed her success to a male French colleague who had nothing to do with the acquisition of the business.

44.     Mr. Eisenhart also cut Ms. Belabbas out of important meetings, including meetings held specifically to discuss her accounts, choosing to hold these meetings instead with her male counterparts.

45.     Significantly, Ms. Belabbas was only one of two female employees in Inova's New York City office.  Moreover, of the Company's approximately 60 employees based in France, only about five are women, and only two of those women work on the business side of the Company.

46.     Mr. Eisenhart also often made misogynistic remarks in the workplace, illustrating his apparent belief that women are objects for sexual gratification and are not to be taken seriously as businesspeople.

47.     On one occasion, Ms. Belabbas relayed to Mr. Eisenhart that a client, Proctor & Gamble, was waiting to make a decision on giving additional work to Inova until after a certain business announcement was made.  Ms. Belabbas also explained that she learned this from her contact at Proctor & Gamble, Janine Elam, who happens to be female.  Mr. Eisenhart responded, "An announcement?  Maybe she [Ms. Elam] is pregnant by her boss."

48.     As another example, when Ms. Belabbas reported to Mr. Eisenhart that a particular contact, Ramon Mohanlal, who was working for a prospect, BeyondSpring Pharmaceuticals, seemed to be interested in doing business with Inova, he disparaged her efforts and ability by stating that the prospect was "likely just hitting on [her]."

**II.     Ms. Belabbas Complains About Discrimination and Is Retaliated Against**

49.     Because of the unjust, discriminatory conditions under which she was forced to work, Ms. Belabbas made numerous protected complaints both verbally and in writing.

50.     In mid-2015, Ms. Belabbas expressed her concern that a particular sales role that was based in the U.S. office and covered North American markets was reporting to a colleague in the Company's French office.

51.     In response, Mr. Eisenhart told Ms. Belabbas, "I would rather have that role managed by the French because I do not trust" the employees from the U.S. office.

52.     Similarly, when Ms. Belabbas complained that the discriminatory territory allocations to which she was subjected made no business sense, because someone from the U.S. office would be in the best position to pitch North American clients, Mr. Eisenhart tersely responded, "You know this is a French company, right?"

53.     When Ms. Belabbas told Mr. Toulemonde that she closed a deal with AbbVie, which became one of the top accounts at Inova, Mr. Toulemonde responded that he was surprised that Ms. Belabbas was able to close such a large deal.

54.     Ms. Belabbas, believing that Mr. Toulemonde's surprise was a reflection of the discriminatory animus by Inova leadership towards her, complained to Mr. Toulemonde that she had been subjected to many inexplicable changes in the allocation of sales territory that favored French employees.  Yet, despite Inova's discriminatory actions taken against Ms. Belabbas, she was able meet and exceed her sales expectations.

55.     Ms. Belabbas continued to report discriminatory conduct, including on March 20, 2016, when she complained in writing to Inova's global CEO, Defendant Gilles Toulemonde, and Human Resources ("HR") professional Sylvie Garlant.

56.     That written complaint followed up on Ms. Belabbas's numerous verbal complaints of discriminatory account management and assignment.

57.     After sending her email complaint on March 20, 2016, Ms. Belabbas had follow-up telephone calls with Ms. Garlant and Mr. Toulemonde, during which she specifically complained about race and gender discrimination.

58.     Ms. Belabbas sent a follow-up email complaint on March 31, 2016.

59.     During her call with Ms. Garlant, Ms. Belabbas was scolded for detailing her complaints in an email, despite having been asked to do so by Ms. Garlant herself.

60.     As a result of her complaints, Mr. Toulemonde further discriminated and retaliated against Ms. Belabbas by excluding her from team dinners.  In fact, Ms. Belabbas was the only employee that was not invited to company-wide key events.

61.     During Mr. Toulemonde's frequent visits to the New York office, Mr. Toulemonde conducted one-on-one meetings with all other sales employees, but never with Ms. Belabbas.

62.     Furthermore, Mr. Toulemonde actively excluded Ms. Belabbas from Inova activities, such as key sales meetings where new features and sales strategies were discussed.

63.     Mr. Toulemonde also tried to silence Ms. Belabbas, by telling her to "stop copying me on your emails about your issues with Fritz."

64.     A so-called telephonic "mediation" was scheduled for April 1, 2016 to address Ms. Belabbas's complaints concerning discrimination.

65.     During this "mediation," which lasted only 30 minutes and was "attended" only by Ms. Garlant and Mr. Eisenhart, Ms. Belabbas again raised her concerns about discriminatory territory and account distribution.

66.     However, these complaints were met with outright hostility and a complete lack of genuine engagement by Ms. Garlant and Mr. Eisenhart.

67.     Ms. Belabbas received no response to her complaints after the internal "mediation," and she therefore was forced to send a follow-up email on April 11, 2016.

68.     This email, which was sent to Mr. Eisenhart, Mr. Toulemonde and Ms. Garlant, yet again reiterated Ms. Belabbas's complaints concerning Mr. Eisenhart's discriminatory assignment of accounts to male French colleagues.

69.     Mr. Toulemonde reacted to Ms. Belabbas's April 11, 2016 email by sending an email to Mr. Eisenhart, saying, "Enough is enough.  Good luck with her."

70.     This sentiment is consistent with the multiple warnings Mr. Eisenhart gave to Ms. Belabbas to "Stop writing emails," because "Complaining in emails never resolves anything."

71.     When Ms. Belabbas continued to follow up with Mr. Eisenhart about her complaints, he simply brushed her aside and told her she would receive a response "in due time." However, Ms. Belabbas never received a response to her complaints or concerns.

72.     In or around late March and early April 2016, Ms. Belabbas repeatedly informed Mr. Eisenhart and Ms. Garlant that she was suffering from various medical issues, including very low blood pressure, dizziness and tremendous stress, as a result of the discriminatory treatment and her work environment.

73.     On May 2, 2016, Ms. Belabbas informed Inova that she needed to take a medical leave of absence due to these medical issues.

74.     On May 3, 2016, the day after disclosing her need to take medical leave, Mr. Eisenhart called Ms. Belabbas and told her that she would be terminated immediately.

75.     The unlawful discriminatory and retaliatory decision to terminate Ms. Belabbas was made by Mr. Toulemonde and Mr. Eisenhart.

76.     At no time before May 2, 2016 was Ms. Belabbas ever informed, warned or otherwise told that her job was in jeopardy.

77.     To the contrary, Ms. Belabbas's performance remained at all times outstanding, and she was given a raise in January 2016, just before making her written complaints.

78.     During the call in which Mr. Eisenhart informed Ms. Belabbas of her termination, as well as in a follow-up email, Mr. Eisenhart stated, in sum and substance, that Ms. Belabbas's complaints were the reason for her termination.

79.     Indeed, Mr. Eisenhart's May 3, 2016 email, which largely tracks the discussion from their telephone call, says, *inter alia*: "It is clear you are unhappy working at Inova and that you have a significant amount of anger directed toward me.  While we tried to resolve that in an informal mediation, that was not successful as proved by your last email dated April 11th."

80.     Ms. Belabbas's April 11, 2016 email was itself was a protected complaint, as were her related and preceding verbal complaints of discrimination.

81.     The May 3, 2016 email also referenced Mr. Eisenhart's "disappoint[ment]" with the fact that Ms. Belabbas purportedly failed to timely notify the Company when she was unable to attend a conference personally in April 2016 in Stockholm because she "felt unfit for travel."

82.     However, Ms. Belabbas notified Mr. Eisenhart and the Company as soon as practicable, and his claimed "disappoint[ment]" simply demonstrates Inova's bias towards Ms. Belabbas due to her disclosed illnesses.

83.     Furthermore, Mr. Eisenhart did not mention that Ms. Belabbas's termination was related to the Stockholm conference during their telephone call about her termination.  Instead, during the call, Mr. Eisenhart styled the termination as somehow "mutual," due to Ms. Belabbas's supposed unhappiness with Inova, as expressed through her protected complaints.

84.     Indeed, no one at the Company expressed any displeasure with Ms. Belabbas's handling of the Stockholm conference until Mr. Eisenhart's post-hoc assertion in the May 3, 2016 email.

### FIRST CAUSE OF ACTION
**(Discrimination in Violation of Title VII)**
*Against Defendant Inova Software Inc.*

85.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

86.     Defendant Inova discriminated against Plaintiff on the basis of her race, ethnicity and/or national origin in violation of Title VII by, *inter alia*, denying her the equal terms and conditions of employment and unlawfully terminating her employment because of her race and/or ethnicity.

87.     As a direct and proximate result of Defendant Inova's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages.

88.     As a direct and proximate result of Defendant Inova's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

89.     Defendant Inova's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

### SECOND CAUSE OF ACTION
**(Retaliation in Violation of Title VII)**
*Against Defendant Inova Software Inc.*

90.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

91.     Defendant Inova retaliated against Plaintiff for her engagement in protected activities in violation of Title VII by, *inter alia*, denying Plaintiff the same terms and conditions of employment available to other employees, up to and including the termination of Plaintiff's employment.

92.     As a direct and proximate result of Defendant Inova's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages.

93.     As a direct and proximate result of Defendant Inova's unlawful retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

94.     Defendant Inova's unlawful and retaliatory actions constitute malicious, willful and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

### THIRD CAUSE OF ACTION
**(Discrimination in Violation of ADA)**
***Against Defendant Inova Software Inc.***

95.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

96.     Defendant Inova discriminated against Plaintiff on the basis of her disability and/or perceived disability in violation of ADA by, *inter alia*, denying her the equal terms and conditions of employment and unlawfully terminating her employment because of her disability.

97.     As a direct and proximate result of Defendant Inova's unlawful discriminatory conduct in violation of ADA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages.

98.     As a direct and proximate result of Defendant Inova's unlawful discriminatory conduct in violation of ADA, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

99.     Defendant Inova's unlawful and discriminatory actions constitute malicious, willful and wanton violations of ADA, for which Plaintiff is entitled to an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**(Retaliation in Violation of ADA)**
***Against Defendant Inova Software Inc.***

100.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

101.     Defendant Inova retaliated against Plaintiff for her engagement in protected activities in violation of the ADA by, *inter alia*, denying Plaintiff the same terms and conditions of employment available to other employees, up to and including the termination of Plaintiff's employment.

102.     As a direct and proximate result of Defendant Inova's unlawful retaliatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages.

103.     As a direct and proximate result of Defendant Inova's unlawful retaliatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

104.     Defendants' unlawful and retaliatory actions constitute malicious, willful and wanton violations of the ADA, for which Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### (Discrimination in Violation of § 1981)
*Against All Defendants*

105.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

106.    Defendants have discriminated against Plaintiff on the basis of her race and/or ethnicity in violation of § 1981 by, *inter alia*, denying her the equal terms and conditions of employment and unlawfully terminating her employment because of her race and/or ethnicity.

107.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of § 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages.

108.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of § 1981, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

109.    Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of § 1981, for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of § 1981)
*Against All Defendants*

110.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

111.    Defendants retaliated against Plaintiff by, *inter alia*, terminating her employment for her engagement in activities protected under § 1981.

112.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of § 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages.

113.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

114.     Defendants' unlawful and retaliatory actions constitute malicious, willful and wanton violations of § 1981, for which Plaintiff is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### (Interference in Violation of the FMLA)
### *Against Defendant Inova Software Inc.*

115.     Plaintiff hereby repeats and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

116.     At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA.  At all times relevant herein, Defendant Inova was and is a "covered employer" within the meaning of the FMLA.

117.     By the actions described above, among others, Defendant Inova violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of Plaintiff's rights by, *inter alia*, terminating her employment to prevent her from exercising her rights under the FMLA to take medical leave and return to her position or an equivalent position upon her return.

118.     As a direct and proximate result of Defendant Inova's unlawful conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, harm, for which she is entitled to an award of damages to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

119.    Defendant Inova's unlawful actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

### EIGHTH CAUSE OF ACTION
**(Retaliation in Violation of the FMLA)**
***Against Defendant Inova Software Inc.***

120.    Plaintiff hereby repeats and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

121.    At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA.  At all times relevant herein, Defendant Inova was and is a "covered employer" within the meaning of the FMLA.

122.    Defendant Inova was obligated to provide Plaintiff with FMLA leave and reinstate her to the same or an equivalent position upon her return from approved leave.

123.    By the actions described above, among others, Defendant Inova violated the FMLA by unlawfully retaliating against Plaintiff for exercising rights protected by the FMLA by, *inter alia*, terminating her in retaliation for asserting her rights under the FMLA and subjecting her to an adverse employment action that would reasonably dissuade a reasonable person from exercising rights protected by the FMLA.

124.    As a direct and proximate result of Defendant Inova's unlawful and retaliatory conduct in violation of the FMLA, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of damages, to the greatest extent permitted under law, in addition to reasonable attorneys' fees and expenses.

125.    Defendant Inova's unlawful and retaliatory actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

## NINTH CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)
### *Against All Defendants*

126.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

127.     Defendants have discriminated against Plaintiff on the basis of her race, ethnicity, national origin, gender and/or disability in violation of the NYSHRL by, *inter alia*, denying her the equal terms and conditions of employment and unlawfully terminating her employment.

128.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief, in addition to reasonable attorneys' fees and expenses.

129.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of monetary damages and other relief.

## TENTH CAUSE OF ACTION
### (Retaliation in Violation of NYSHRL)
### *Against All Defendants*

130.     Plaintiff hereby repeats and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

131.     Defendants retaliated against Plaintiff by, *inter alia*, terminating her employment for her engagement in activities protected under the NYSHRL.

132.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or

economic harm, for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and expenses.

133.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

### ELEVENTH CAUSE OF ACTION
**(Aiding and Abetting in Violation of the NYSHRL)**
***Against Defendants Toulemonde and Eisenhart***

134.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

135.     Defendants Toulemonde and Eisenhart have aided and abetted the unlawful discrimination and retaliation committed against Plaintiff.

136.     As a direct and proximate result of Defendants Toulemonde and Eisenhart's unlawful aiding and abetting in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

137.     As a direct and proximate result of Defendants Toulemonde and Eisenhart's unlawful aiding and abetting in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of monetary damages and other relief.

### TWELFTH CAUSE OF ACTION
**(Discrimination in Violation of NYCHRL)**
***Against All Defendants***

138.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

139.     Defendants have discriminated against Plaintiff on the basis of her race, ethnicity, national origin, gender and disability in violation of NYCHRL by, inter alia, denying her the equal terms and conditions of employment and unlawfully terminating her employment because of her race, ethnicity, national origin, gender and/or disability.

140.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and expenses.

141.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

142.     Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## THIRTEENTH CAUSE OF ACTION
### (Retaliation in Violation of NYCHRL)
#### Against All Defendants

143.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

144.     Defendants retaliated against Plaintiff by, *inter alia*, terminating her employment for her engagement in activities protected under the NYCHRL.

145.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages.

146.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

147.     Defendants' unlawful and retaliatory actions constitute malicious, willful and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

**FOURTEENTH CAUSE OF ACTION**
**(Aiding and Abetting in Violation of NYCHRL)**
*Against Defendants Toulemonde and Eisenhart*

148.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

149.     Defendants Toulemonde and Eisenhart knowingly or recklessly aided and abetted the unlawful discrimination and retaliation to which Plaintiff was subjected in violation of the NYCHRL.

150.     As a direct and proximate result of Defendants Toulemonde and Eisenhart's unlawful aiding and abetting in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and expenses.

151.     As a direct and proximate result of Defendants Toulemonde and Eisenhart's unlawful aiding and abetting in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

152.     Defendants Toulemonde and Eisenhart's unlawful aiding and abetting constitutes malicious, willful and wanton violations of the NYCHRL, for which Plaintiff is entitled to an award of punitive damages.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against

Defendants, containing the following relief:

A.      A declaratory judgment that the actions, conduct and practices of Defendants

complained of herein violate the laws of the United States, the State of New York and the City of

New York;

B.      An injunction and order permanently restraining Defendants and their partners,

officers, owners, agents, successors, employees and/or representatives and any and all persons

acting in concert with them, from engaging in any such further unlawful conduct, including the

policies and practices complained of herein;

C.      An order directing Defendants to take such affirmative action as is necessary to

ensure that the effects of these unlawful employment practices are eliminated;

D.      An award of damages against Defendants, or any jointly or severally liable entity

or person, in an amount to be determined at trial, plus prejudgment interest, to compensate

Plaintiff for all monetary and/or economic damages;

E.      An award of damages against Defendants, or any jointly or severally liable entity

or person, in an amount to be determined at trial, plus prejudgment interest, to compensate

Plaintiff for all non-monetary and/or compensatory damages;

F.      An award of liquidated damages;

G.      An award of punitive damages;

H.      Prejudgment interest on all amounts due;

I.      An award of costs that Plaintiff incurs in this action, as well as an award of

reasonable attorneys' fees to the fullest extent permitted by law; and

J.      Such other and further relief as the Court may deem just and proper.

24

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.


Dated: June 20, 2017
       New York, New York

                                WIGDOR LLP

                                By: _____
                                    Lawrence M. Pearson
                                    Michael J. Willemin

                                85 Fifth Avenue
                                New York, New York 10003
                                Tel: (212) 257-6800
                                Fax: (212) 257-6845
                                lpearson@wigdorlaw.com
                                mwillemin@wigdorlaw.com

                                *Attorneys for Plaintiff*