USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/24/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
CHERIFA BELABBAS,                                            :
                              Plaintiff,                     :
                                                             :    16 Civ. 7379 (LGS)
              -against-                                      :
                                                             :    **OPINION AND ORDER**
                                                             :
INOVA SOFTWARE INC., et al.,                                 :
                              Defendants.                    :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Cherifa Belabbas brings this employment discrimination action against Defendants Inova Software Inc. ("Inova"), Fritz Eisenhart and Gilles Toulemonde under federal, state and city law. Defendant Toulemonde, a French citizen and resident, moved to dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). At the parties' request, this motion is deemed to apply to the claims against Toulemonde, which were repleaded virtually identically in the Second Amended Complaint (the "Complaint"). For the following reasons, the motion is denied.

## I.  BACKGROUND

The following facts are taken from the Complaint and, where noted, the parties' declarations concerning jurisdiction. All pleadings and declarations are construed in the light most favorable to Plaintiff, and all doubts are resolved in her favor. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013); *see also Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016) (applying similar standard to motion to dismiss under Rule 12(b)(6)).

Plaintiff is a United States citizen and a "Semitic Arab-Berber woman of Belgian/North

African national origin who resides in New York County." From 2009 to 2016, Plaintiff worked at Inova first as a Presales Engineer and then as Senior Project Manager. Plaintiff was one of two female employees in Inova's New York office. She was "extremely successful in her role and received excellent performance reviews and client feedback throughout her employment." She also broke an Inova record by bringing in more new subscription accounts than any of her colleagues.

Plaintiff's "ability to do her job" was undermined after Fritz Eisenhart became the President and CEO of Inova's United States operations in January 2013. Eisenhart assigned Plaintiff to only one new project throughout 2013, while assigning the majority of new projects to Plaintiff's male, French colleagues. Eisenhart did not assign Plaintiff to any new projects from 2014 until her termination in May 2016. When a Senior Vice President left the New York office in 2015, all of his "accounts and progressed opportunities were shifted" to Plaintiff's male, French colleagues based in France rather than to Plaintiff, even though the accounts were located in North America. In October 2015, "the accounts of the entire U.S. east coast territory" were transferred from Plaintiff to her male, French colleagues. Plaintiff's male, French colleagues were also given other advantages, including credit and financial compensation for acquiring accounts that Plaintiff brought to the verge of closing. Eisenhart cut Plaintiff out of important meetings, "including meetings held specifically to discuss her accounts," instead choosing to hold the meetings with Plaintiff's "male counterparts." Eisenhart also made misogynistic and discriminatory comments in the office, which are detailed in the Complaint.

Plaintiff also encountered discriminatory treatment from movant Gilles Toulemonde, Inova's global CEO. The Complaint alleges that, despite living and working in France, Toulemonde (1) has managed the operations of the New York office since 2010, (2) has "near-

daily operational contact with the New York office," (3) is "heavily involved" in sales and marketing, service delivery and human resources ("HR") operations in New York, (4) has control over various "personnel decisions in and affecting the New York office" and (5) spent months in New York City and visits New York regularly for office visits, events and conferences, "acting as the face of Inova's New York office." Plaintiff's declaration adds that Toulemonde (1) supervised Plaintiff and made decisions "regarding the terms and conditions of [her] employment at Inova," (2) was "responsible for allocating sales leads and territories" to Inova sales representatives in New York, (3) "spent several hours each morning managing Inova's New York office remotely by telephone, email, video conferencing and other means," (4) "regularly entered into agreements on behalf of [the] New York office," and (5) had the "final say in HR decisions." Toulemonde's declaration admits that he "consult[s] on some [HR] decisions for Inova."

When Plaintiff told Toulemonde that she closed a deal with a company that became one of Inova's top accounts, he "responded that he was surprised that [she] was able to close such a large deal." Plaintiff believed that Toulemonde's surprise was a reflection of Inova leadership's "discriminatory animus" towards her, and complained to Toulemonde that "she had been subjected to many inexplicable changes in the allocation of sales territory that favored French employees." On March 20, 2016, Plaintiff complained in writing to Toulemonde and an HR professional about discriminatory conduct. She then had a follow-up phone call with Toulemonde and the HR representative, "during which she specifically complained about race and gender discrimination." Plaintiff sent a follow-up email complaint on March 31, 2016.

As a result of her complaints, Toulemonde excluded Plaintiff from team dinners and "key sales meetings where new features and sales strategies were discussed." During his frequent

trips to the New York office, Toulemonde conducted one-on-one meetings with all sales employees except Plaintiff. Toulemonde also told Plaintiff to stop copying him on emails about her issues with Eisenhart.

On April 1, 2016, a telephonic mediation was scheduled to address Plaintiff's complaints. The mediation lasted 30 minutes, and was attended only by Eisenhart and the HR professional. Plaintiff received no response to her complaints following the call, and sent a follow-up email to Eisenhart, Toulemonde and the HR representative on April 11, 2016. Toulemonde responded to Plaintiff's April 11, 2016, email by sending an email to Eisenhart stating, "Enough is enough. Good luck with her."

On May 2, 2016, Plaintiff informed Inova that she needed to take a leave of absence due to medical issues, detailed in the Complaint, resulting from the discriminatory treatment and her work environment. Toulemonde and Eisenhart jointly decided to terminate Plaintiff's employment, and on May 3, 2016, Eisenhart told Plaintiff that she would be terminated immediately. Eisenhart told Plaintiff that her complaints were the reason for her termination.

As is relevant here, Plaintiff alleges that Defendant Toulemonde discriminated and retaliated against her in violation of 42 U.S.C. § 1981, the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. (the "NYSHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. (the "NYCHRL").

## II. STANDARD

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)). The prima facie showing "must include an averment of facts

that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on Sept. 11, 2011*, 714 F.3d 659, 673 (2d Cir. 2013) (citation omitted). In "deciding a pretrial motion to dismiss for lack of personal jurisdiction," a district court has "considerable procedural leeway" and "may determine the motion on the basis of affidavits alone." *Dorchester*, 722 F.3d at 84. Where a court relies on pleadings and affidavits, it "construe[s] the pleadings and affidavits in the light most favorable to plaintiff[], resolving all doubts in [her] favor." *Id.* at 85.

On a motion to dismiss for failure to state a claim, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Trs. of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 566. To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

## III. DISCUSSION

### A. Personal Jurisdiction

Defendant Toulemonde moves to dismiss the Complaint pursuant to Rule 12(b)(2) on the grounds that (1) the Court lacks general jurisdiction over him under New York law, (2) the Court lacks specific jurisdiction over him under New York law and (3) the exercise of personal jurisdiction would not comport with the Constitution's due process requirements. As explained below, Plaintiff has alleged facts sufficient to support the exercise of specific jurisdiction over Defendant Toulemonde.

### 1. Statutory Basis for Personal Jurisdiction

Unless a federal statute directs otherwise and "subject to limitations imposed by the United States Constitution, [courts] look to the law of the forum state to determine whether a federal district court has personal jurisdiction . . . ." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). As is relevant here, New York law confers specific jurisdiction over a non-domiciliary who "transacts any business within the state" that gives rise to a cause of action. CPLR § 302(a)(1); *see also Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017). The "overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within New York, thereby invoking the benefits and protections of its laws." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (citations omitted).

New York law does not distinguish actions taken in a defendant's personal capacity from actions taken in his "corporate" capacity. *See Chloe v. Queen Bee of Beverly Hills*, 616 F.3d 158, 164 (2d Cir. 2010) (CPLR § 302 "confers jurisdiction over individual corporate officers who supervise and control an infringing activity"); *Kreutter v. McFadden Oil Corp.*, 522 N.E. 40, 44 (N.Y. 1988) (regarding "CPLR 302, we determine that it is neither necessary nor desirable to adopt the fiduciary shield doctrine in New York"). Where the CEO of an organization exercises extensive control over the day-to-day activities of a corporation, it is "appropriate" for the court to "consider the scope of the [corporation's] activities in New York in evaluating whether it [can] exercise personal jurisdiction over [the CEO]." *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 98 (2d Cir. 2016), *cert. denied sub nom. Robertson v. EMI Christian Music Grp., Inc.*, 137 S. Ct. 2269 (2017).

Here, Plaintiff has averred facts that, if credited, would establish that Toulemonde (1) has

near-daily contact with Inova's New York office; (2) manages the affairs of the New York office; (3) supervised Plaintiff -- an employee of the New York office; (4) determined what assignments were given in the New York office, presumably including the assignments that Plaintiff challenges as discriminatory; (5) regularly entered into agreements on behalf of the New York office; (6) made the decisions to exclude Plaintiff from team dinners and meetings in New York and (7) ultimately decided to fire her. These allegations are more than sufficient to make a prima facie showing that Toulemonde purposely availed himself of the privilege of transacting business in New York, and that his actions gave rise to Plaintiff's case. *See, e.g.*, *Eades*, 799 F.3d at 168 (on Fair Debt Collection Practices Act claim, "mailing one debt collection notice to [plaintiff], engaging in one debt collection phone call with [plaintiff who was in New York], and mailing a summons and complaint to [plaintiffs in New York]" was sufficient to "establish personal jurisdiction under § 302(a)(1)").

### 2. Constitutional Due Process

To determine whether a finding of personal jurisdiction is consistent with the Constitution's due process requirements, the Court undertakes a "minimum contacts" inquiry and a "reasonableness" inquiry. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (citation omitted). Minimum contacts to support specific personal jurisdiction "exist where the defendant purposefully availed [him]self of the privilege of doing business in the forum and could foresee being haled into court there." *Eades*, 799 F.3d at 169; *see also Waldman*, 835 F.3d at 331 (minimum contacts for specific personal jurisdiction "depend[] on in-state activity *that gave rise to the episode-in-suit*") (emphasis in original).

"If minimum contacts exist, the defendant has to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Eades*, 799 F.3d

7

at 169 (citation omitted). "Relevant factors at this second step of the analysis may include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; [and] (3) the plaintiff's interest in obtaining convenient and effective relief. . . ." *Licci*, 732 F.3d at 170 (citations omitted). Ultimately, the exercise of personal jurisdiction is reasonable if it would "comport[] with traditional notions of fair play and substantial justice." *Waldman*, 835 F.3d at 331 (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014)).

The exercise of personal jurisdiction over Toulemonde is consistent with the Constitution's due process requirements. First, as explained above, Plaintiff has averred sufficient facts to make out a prima facie case that (1) Toulemonde "purposefully availed [him]self of the privilege of doing business in [New York] and could foresee being haled into court there," *Eades*, 799 F.3d at 169, and (2) his alleged contacts with New York gave rise to the instant case, *see Waldman*, 835 F.3d at 331.

Second, Toulemonde has not demonstrated that the exercise of personal jurisdiction would be unreasonable in this case. *See Eades*, 799 F.3d at 169. Although it might be less convenient for him -- as a resident of France -- to defend a suit in New York, "the conveniences of modern communication and transportation ease any burden the defense of this case in New York might impose on [Defendant]." *Licci*, 732 F.3d at 174 (citation omitted). Moreover, the State of New York has an interest in providing an "effective means of redress for its residents," *Eades*, 799 F.3d at 169, and ensuring that "parties transacting business in New York comply with the law." *Persh v. Petersen*, No. 15 Civ. 1414, 2016 WL 4766338 at *8 (S.D.N.Y. Sept. 13, 2016). Plaintiff, a resident of New York County, also has a strong interest in obtaining convenient and effective relief in this District. *See MacDermid, Inc. v. Deiter*, 702 F.3d 725, 731

(2d Cir. 2012).

Because Plaintiff has averred facts sufficient to support a finding of specific jurisdiction over Defendant Toulemonde, his motion to dismiss the Complaint for lack of personal jurisdiction is denied.

**B.     Section 1981**

Defendant Toulemonde moves to dismiss Plaintiff's § 1981 discrimination and retaliation claims under Rule 12(b)(6) for failure to state a claim.  He argues that the Complaint (1) contains no allegations that he "personally discriminated against Plaintiff on the basis of her race" and (2) does not allege that he "knew of a protected activity and effected an adverse employment action."  Toulemonde's motion to dismiss Plaintiff's § 1981 claims is denied.

**1. Discrimination**

"Section 1981 provides a cause of action for discrimination on the basis of race, which includes 'ancestry or ethnic characteristics,' but not for discrimination based 'solely on the place or nation of [the plaintiff's] origin.'"  *Nadesan v. Citizens Fin. Grp.*, 673 F. App'x 47, 49 (2d Cir. 2016) (summary order) (quoting *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)); *accord Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998).  Discrimination claims under § 1981 are evaluated under the same standard as Title VII discrimination claims.  *See, e.g.*, *Vill. of Freeport v. Barrella*, 814 F.3d 594, 616 (2d Cir. 2016).  To survive a motion to dismiss in a § 1981 discrimination case, "a plaintiff must plausibly allege that (1) the employer took adverse action against [her] and (2) [her] race . . . was a motivating factor in the employment decision."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (setting forth requirements for discrimination claim under Title VII).

At the motion to dismiss stage, a plaintiff is not required to plead facts establishing a

prima facie case of discrimination under the *McDonnell Douglas* framework, which applies at summary judgment. *Id.* at 84; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). To survive a motion to dismiss, the facts alleged in the complaint "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *accord Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016). The Second Circuit has repeatedly emphasized the low bar for such pleadings to raise an inference of discrimination. *See, e.g.*, *Doe*, 831 F.3d at 55 n.8 (collecting cases); *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order) ("At the pleading stage, district courts would do well to remember [the] exceedingly low burden that discrimination plaintiffs face . . . .").

"An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (citation omitted). A plaintiff attempting to show discrimination on the basis of less favorable treatment "must show that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id.* (citation omitted).

Here, the Complaint alleges sufficient facts to give "plausible support" to the "minimal inference" that Toulemonde discriminated against Plaintiff on the basis of her race. *Id.* at 311. The Complaint alleges that Plaintiff is an Arab-Berber woman who was excellent at her job, consistently received excellent performance reviews and outperformed all of her colleagues by breaking a company record and bringing in more new subscription accounts than anyone else.

The Complaint further alleges that in spite of these successes, Plaintiff was given only one new account between the beginning of 2013 and her termination in May 2016, and had her accounts reassigned to male, French colleagues who, drawing all reasonable inferences in favor of Plaintiff, are not Arab-Berber. Moreover, Plaintiff's successes were attributed to her non-Arab-Berber colleagues, who were also given economic advantages for Plaintiff's successes. Drawing all reasonable inferences in Plaintiff's favor, Toulemonde was at least partially responsible for the reallocation of Plaintiff's assignments, as he managed the New York office, was "heavily involved in sales and marketing" and had control over personnel decisions affecting the New York office.

Viewing the Complaint as a whole, it alleges that Plaintiff was treated less favorably than her non-Arab-Berber colleagues to whom she was, at a minimum, similarly situated (if not more qualified). The Complaint thus plausibly alleges an inference of discrimination. *See id.* at 312; c*f. Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1202 (2016) (affirming dismissal of § 1981 discrimination claim where plaintiffs did not provide "meaningful specifics of the alleged difference in qualifications" between minority employees and allegedly less qualified white employees who were promoted ahead of the minority employees).

As the Complaint alleges sufficient facts to support the minimal inference that Toulemonde acted with discriminatory intent, his motion to dismiss is denied as to Plaintiff's § 1981 discrimination claim.

### 2. Retaliation

Retaliation claims under § 1981 are likewise analyzed pursuant to Title VII principles. *See Littlejohn*, 795 F.3d at 315. An employer may not "discriminat[e] against an employee for

opposing any practice made unlawful by [§ 1981]." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (discussing retaliation claims under Title VII). To establish a presumption of retaliation at the initial stage of the litigation, "a plaintiff must present evidence that shows (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316. "[T]he allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of [such] litigation." *Id.*

The Complaint alleges facts that give plausible support to a claim of retaliation under § 1981. According to the Complaint, Plaintiff believed that Inova leadership had "discriminatory animus" towards her and repeatedly reported Inova's allegedly discriminatory conduct to Defendant Toulemonde and others. After sending him an email complaint on March 20, 2016, Plaintiff then had a follow-up telephone call with Toulemonde during which she "specifically complained about race and gender discrimination." Following Plaintiff's complaints, Toulemonde excluded Plaintiff from team dinners and sales meetings, frequently met with all New York sales employees but Plaintiff, told Plaintiff to stop emailing him about her "issues" with Eisenhart and ultimately decided to terminate her. These allegations lead to the inference that Plaintiff suffered several adverse employment actions as a result of complaining about alleged discrimination -- including race-based discrimination -- to Toulemonde. Consequently, his motion to dismiss Plaintiff's § 1981 retaliation claim is also denied.

C. The NYSHRL

Defendant Toulemonde moves to dismiss Plaintiff's claims for discrimination and retaliation in violation of the NYSHRL on the grounds that the Complaint does not allege that he

"treated [Plaintiff] differently or took any adverse action against her on the basis of her membership in any protected class." Toulemonde's motion to dismiss is denied as to both claims.

The NYSHRL prohibits an employer from discharging or otherwise discriminating against an employee "in terms, conditions or privileges of employment" on the basis of "race, . . . national origin, . . . sex [or] disability." N.Y. Exec. Law § 296(1)(a). The NYSHRL defines "disability" to include a "physical . . . impairment . . . resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function." *Id.* § 292(21)(a). The NYSHRL further prohibits employers from engaging in retaliatory behavior. Employers may not "discharge . . . or otherwise discriminate against any person because . . . she has opposed any practices forbidden under this article . . . ." *Id.* § 296(1)(e). Like § 1981 discrimination and retaliation claims, employment discrimination and retaliation claims brought under the NYSHRL are analyzed under the same standard as Title VII claims. *See Cooper v. N.Y. State Dep't of Labor*, 819 F.3d 678, 680 n.3 (2d Cir. 2016) (discrimination claims); *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 271 n.3 (2d Cir. 2016) (retaliation claims); *see also Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010) (NYSHRL disability claims analyzed under same standard as Americans with Disabilities Act ("ADA") claims); *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (summary order) (ADA claims analyzed under Title VII pleading requirements at motion to dismiss stage).

For the same reasons discussed above, the Complaint plausibly states claims for race-based discrimination and retaliation under the NYSHRL. The Complaint further states claims for discrimination based on sex and national origin based on the allegations detailed above, which support the inference that Plaintiff was treated less favorably than her male, French

13

colleagues, and states claims for retaliation based on the allegations that Toulemonde penalized her for complaining about such discrimination.

Likewise, the Complaint plausibly states claims for discrimination and retaliation based on disability. Defendant terminated Plaintiff the day after she requested medical leave due to several physical impairments and, drawing all reasonable inferences in favor of Plaintiff, Defendant was aware of Plaintiff's request for medical leave at the time he terminated her. Under the low bar for pleadings at the motion to dismiss stage, the Complaint plausibly alleges that Defendant both discriminated against Plaintiff by firing her after learning of her disability and retaliated against Plaintiff by firing her for requesting medical leave. *See, e.g.*, *Dooley*, 636 F. App'x at 21 (allegation that plaintiff was fired shortly after injury gave "plausible support to a minimal inference of discriminatory motivation" sufficient to defeat motion to dismiss) (quoting *Vega*, 801 F.3d at 84); *Bucalo v. Shelter Isl. Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012) (temporal proximity can establish causal connection for purposes of evaluating retaliation claim). Consequently, Toulemonde's motion to dismiss is denied as to Plaintiff's NYSHRL claims.

### D. The NYCHRL

Defendant Toulemonde moves to dismiss Plaintiff's claims for discrimination and retaliation in violation of the NYCHRL for the same reasons as Plaintiff's NYSHRL claims. His motion is denied as to both claims.

The NYCHRL prohibits employers from discriminating against any person "in compensation or in terms, conditions or privileges of employment" based on that person's "actual or perceived . . . race, . . . national origin, gender [or] disability . . . ." N.Y.C. Admin. Code § 8-107(1)(a). A person is disabled within the meaning of the NYCHRL if they have "any physical, medical, mental or psychological impairment." *Id.* § 8-102(16)(a). The NYCHRL

14

further prohibits "retaliat[ion] or discriminat[ion] in any manner against any person because [she] has . . . opposed any practice forbidden" by the NYCHRL. *Id.* § 8-107(7). The NYCHRL "should be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015). Courts "must analyze NYCHRL claims separately and independently from any federal and state law claims, construing [its] provisions broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." *Id.* (alteration in original).

As the Complaint states claims for discrimination and retaliation under the NYSHRL, it also states claims for discrimination and retaliation under the broader provisions of the NYCHRL. Toulemonde's motion to dismiss is therefore denied as to both counts.

## IV. CONCLUSION

For the foregoing reasons, Defendant Toulemonde's motion to dismiss is DENIED. The Clerk of Court is respectfully directed to close the motion at Docket Number 36.

Dated: August 24, 2017
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE